# SULLIVAN,

## JANUARY TERM, A. D. 1849.

### PILLSBURY v. PILLSBURY.

Where several agree in writing to contribute certain sums of money to purchase certain land, and build mills thereon, if some of them proceed and accomplish the undertaking, they may recover of a party refusing to contribute the sum by him subscribed.

If, in the progress of the undertaking, some or all of them agree to act as copartners, it will not impair such right of action against the delinquent party, whether he has joined the association or declined to do so.

If the parties subscribe articles framed for the purpose of regulating their common action, in regard to the common property, and the prosecution of the work, they do not thereby become partners, unless the articles in terms establish that relation.

A nonsuit will not be ordered upon evidence produced by the defendant. The plaintiff has a right to have it weighed by the jury.

ASSUMPSIT. The first count was for money paid, laid out and expended. The second was for money had and received.

The plaintiffs offered a paper containing a proposal signed by Lewis Pillsbury, one of their number, " to deed to the company which is to be formed for the purpose of building mills, all the mills and privilege," describing them, " for the sum of four hundred dollars." Beneath that followed these words : " We, the undersigned, agree to take the amount of stock in the mills here affixed to our names." This was signed by the defendant with the figures $400 set against his name, and by all the plaintiffs ; each with a sum indicated by figures against his name, the whole amounting to $2,200. This paper was dated

the third day of April, 1843. They next offered a deed dated the day following, duly executed by said Lewis Pillsbury, containing the usual covenants of warranty, and purporting to convey to himself, the defendant and the other plaintiffs, the real estate described in the proposal above recited. This deed was duly acknowledged and recorded. They also offered evidence to prove that at a meeting of the subscribers to the paper, held on the 17th day of April, 1843, they chose a clerk, treasurer, and a board of three directors, for whom the defendant voted, to construct the mill; that about the last of that month a mill-wright was procured to inspect the privilege, and to determine whether there was water enough, and if so to decide upon the best location and mode of construction; that the defendant attended this examination, and appeared active in advising that one Duncan should be employed the mill-wright, &c.; that he afterwards declared that he owned a larger share of the mills than any other one, and had a right to go in and turn out the miller, and that he did sundry other acts tending to show that he acted as owner in the mill; that the board of directors procured a mill to be erected which cost about $4,000, in the fall of 1843, and that they called upon the defendant to pay his proportion of the expense of erecting it, according to the sum that he subscribed.

Evidence was offered to show that there was an agreement to proceed to build the mill as soon as twenty shares should be subscribed, equal to $100 per share, and that if the cost should exceed the amount subscribed, the balance should be paid by the subscribers in the proportions of the several sums subscribed by them.

The defendant, upon this evidence, submitted a motion for a nonsuit, which was denied. He then proved that on the 17th day of April, 1843, the plaintiffs, the subscribers, became parties to certain articles, the object of which was to regulate their action as a company, in relation to the

property and the enterprise generally, but that the defendant then and ever since refused to become a party to those articles. He then offered evidence to prove that before the organization of the company he gave notice to the other subscribers that he should not pay any thing, or have any thing farther to do with the matter.

He also gave evidence of the admissions of Lewis Pillsbury, one of the plaintiffs, to the effect that when the paper containing the agreement to take stock in the proposed mill was signed by the defendant and the other parties, it was said by persons present that it should not be binding upon them, and that the defendant, before he signed, was told that he might afterwards join the company or not, as he should see fit, and that this was in the presence of several of the plaintiffs, and with their knowledge; that the defendant did not assent to the conveyance of the real estate made by Lewis Pillsbury to him and the others. He also gave evidence that he was induced to vote for the directors, and other officers chosen at the subscribers' meeting, by the assurances of Nichols and others of the plaintiffs, that by such voting he should not be taken to be bound to become a member of the company.

The court instructed the jury that if the defendant signed the paper, and before any act was done by the company incurring liability, gave them notice of his intention to withdraw, and to have nothing to do with the concern, he would not be liable. But that after such liability was incurred, and the mill was erected, he could not withdraw, and would be liable. To this instruction the defendant excepted.

The jury returned a verdict for the plaintiffs; and in answer to certain inquiries submitted by the court, by the consent of the parties, the jury returned answers to the effect that the defendant did consent to become a member of the association, and that he never withdrew from it.

The defendant thereupon moved that the verdict be set aside on account of the exceptions taken, and for a new trial.

*Leland,* for the defendant.

1. The paper purporting to be a subscription signed by this defendant April 3, 1843, was improperly admitted. This suit is not to recover the amount of his subscription on the paper, but to charge him with the expense of building, &c.; that is, to charge him as a joint owner in the stock as partner. The case finds that the mill was erected at the joint expense of the stockholders, and is now owned by them, and carried on by the company, and the losses and profits received and borne by each according to his share. But this subscription of itself is not sufficient. It was a course resorted to for the purpose of ascertaining what sums could be raised in case they should conclude to form a company thereafter, and not binding till such company should thereafter be formed. Coll. on Part. 626, 632, 633; 1 B. & Cr. 74; 8 Com. Law 27; 9 B. & Cr. 632; *Bourne* v. *Frecke,* 17 Com. Law 460. The agreement of L. Pillsbury to sell his property to a company thereafter to be formed, was a conditional contract not executed, and this defendant's subscription is a like agreement, but by no means an absolute and unconditional subscription for so much stock which bound him as a joint stock owner, but a promise to become an owner thereafter conditionally, and his liability does not accrue till he joins the association which was thereafter formed under their by-laws, &c.

2. But if this subscription was legally admitted, and this defendant thereby becomes a joint stock owner in the mill, which is now owned and carried on by the company as the case finds, realizing the profits or sustaining the losses as a joint stock company, then this form of action cannot be sustained, because they all, being partners as a joint stock company, cannot maintain a suit at law in the

name of a part of the owners against one of their company for a contribution to the expenditures in erecting and carrying on the mill. That is, twenty-one partners cannot maintain a suit at law against the twenty-second, nor can the twenty-two maintain a suit at law against one of the twenty-two members. All the parties now join in a suit, and a partner cannot sue himself. *Holmes* v. *Higgins*, 1 B. & Cr. 74; 8 Com. Law 27; *Burley & Harris* v. *Harris*, 8 N. H. 233; Chitty Con. 233, a; Perkins' Ed., 1844; Coll. on Part. 627, 628, and authorities there cited. The real estate was purchased for the partnership, paid out of the partnership funds, and became partnership property for the accommodation of the company. Coll. on Part. 68, 317, notes, &c. Statute 358, ch. 21, sec. 4, does not provide for this case. This defendant is not called upon to pay over monies in his hands, as is provided for in the statute. *Perley* v. *Brown*, 12 N. H. 493.

3. The instruction to the jury was incorrect: 1. Because there was no liability, till he had become a member by signing the by-laws and constitution; his subscription being only *executory*. 2. Because some expense being incurred before he notified the company, made no difference unless he had become a partner agreeable to the by-laws. 3. Because if the mere signing of the subscription made him a partner, he was liable at all events, whether any expenses had then accrued or not when he gave the notice, and his giving the notice could not affect his liability as a partner. 4. Because if he had a right to withdraw on notice, and was liable under the instructions of the court to the jury, he was not liable for anything after such notice—not for the whole expense. 5. Because, if a joint stock owner, his interest was transferable, and his only way of getting out of the partnership was to sell out his stock; and that he could not do till he received his certificate; and that he could not have till he became a member by signing the constitution, nor be entitled to any of the profits, &c. *Holmes* v.

*Higgins*, 1 B. & Cr. 74; 8 Com. Law 27; Chitty Con., Perkins' Ed., 1844, 233, 234, 235. "Whether the company turn out successfully or not, if the shareholder neglect to perform the conditions which enable him to share the profits, he is not to be considered an actual partner." Coll. on Part. 633.

*W. P. Flanders*, with whom were *Hubbard* and *Cushing*, for the plaintiffs.

In deciding the question of a partnership, the court will look to the *contract itself;* and that, too, *at the time it was made;* and unless the question is a doubtful one no subsequent acts will make the contract a partnership at the time of its execution. *Saville* v. *Robertson*, 4 D. & E. 720; 3 Stark. Ev. 1072. Looking at the contract itself, it has none of the ingredients of a partnership. 3 Stark. Ev. 1071, 1072, note K; 3 Kent's Com. 3. The admissions or declarations of a partner are not admissible to prove the existence of a partnership. *Tuttle* v. *Cooper*, 5 Pick. 414; *Robbins* v. *Willard*, 6 Pick. 464; 3 Stark. Ev. 1072. A contract may be such as to constitute a partnership as *to third persons*, and not as between the parties to the contract. *Hesketh* v. *Blanchard*, 4 East 144; 3 Kent's Com. 9. Even between partners, a suit at law may be maintained for breach of an agreement to furnish a certain sum or stock for the partnership purposes. In such cases it is not so much a partnership as an *agreement to launch the partnership.* 1 Story Eq., 616, sec. 665; *Venning* v. *Leckie*, 13 East 6; 1 Chitty's Pl. 45; 3 Stark. Ev. 1082, 1083; *Dunham* v. *Gillis*, 8 Mass. 462. When the remedy at law is entirely adequate, no relief will be granted in equity. 1 Story Eq. 620, sec. 670. The parties are tenants in common, and may maintain this suit. *Merrill* v. *Bartlett*, 6 Pick. 46; *Thorndike* v. *DeWolfe*, 6 Pick. 120; *Beaumont* v. *Crane*, 4 Mass. 400; *Bryant* v. *Goodnow*, 5 Pick. 228. The claim or right in this suit is one growing out of real

estate.   The principles and rules of law applicable to part-
nerships, and which govern and regulate partnership
property, do not apply to real estate; and in the absence of
special covenants between the parties, real estate owned
by partners is to be considered and treated as such, with-
out reference to partnership.   3 Kent's Com. 15 ; *Goodwin*
v. *Richardson, Adm'r*, 11 Mass. 469.   When one sub-
scribes, with others, a sum of money to carry on some
common project, lawful in itself, and supposed to be bene-
ficial to the projectors, and money is advanced upon the
faith of such subscription, an action for money paid may
be maintained against a subscriber for the amount of his
subscription, or such portion of it as may be equal to his
proportion of the expenses incurred.   *George* v. *Harris*,
4 N. H. 533; *Society in Troy* v. *Perry*, 6 N. H. 164; *Same*
v. *Goddard*, 7 N. H. 430 ; *Larkin* v. *Dana*, 12 Mass. 196 ;
*Bryant* v. *Goodnow*, 5 Pick. 228 ; *Amherst Academy* v.
*Cowles*, 6 Pick. 427.


GILCHRIST, C. J.   Lewis Pillsbury, one of the plaintiffs
upon the record, having proposed to convey to a company
to be formed for building mills, certain real estate at a
price indicated in the writing, a number of others, includ-
ing the defendant, agreed to take stock in the mills to an
amount indicated by each in his subscription.   The de-
fendant agreed to take $400.

Now the meaning of this paper is very clear.   One party
proposes to sell the land, and each, in consideration of
that proposal, and of the promise of the others, agrees to
give a specified sum towards buying the land and con-
structing the proposed mills.   The defendant promised to
give $400 towards those objects, and this sum he is bound
to pay, provided the conditions have been fulfilled.

There is evidence that they have been fulfilled.   A con-
veyance of the land was made to the subscribers to the
project, and the mills were built; and there is evidence

upon which the jury might well have found that the defendant assented to the conveyance, and assented to the execution of the work in various stages of its progress, by advising and aiding in the appointment of the necessary agents, and the like.

The case is, in many respects, like that of *George* v. *Harris*, 4 N. H. 533. Money has been advanced by the plaintiffs in the prosecution of the object in which the parties all united, and towards which the defendant promised to contribute a certain sum. It has been advanced upon the faith of that promise; and according to the doctrine of the case cited, he is liable to an action in behalf of the parties who have so advanced the money, for the sum which he promised to pay.

This is the plaintiffs' case. Is there a defence to it? The defendant introduced evidence that the subscribers to the project became parties to certain articles, having for their object to regulate their action as a company in relation to the property and to the enterprise generally; and evidence that the defendant refused to sign those articles, and that he refused to proceed farther with the project, and to assent to the conveyance of the land. Upon this evidence he makes two points. In the first place he moves for a nonsuit, upon the ground that the articles show that the land was bought and the mills built for a partnership, and that the defendant cannot be charged as a partner at the suit of the other members of the firm; and secondly, that if that technical objection fails, there is not evidence to show that he ever joined the partnership, and so he never participated in the benefits, either of the grant of the land or of the mills erected.

Upon the first point he insisted upon a nonsuit. The evidence upon which the nonsuit was moved came from the party himself who moved it. A nonsuit is not granted in such cases, for the plaintiff is not obliged to yield to the evidence, and is entitled to have it weighed by the jury.

But the evidence fails to establish a partnership among those who, by signing or otherwise, became parties to the articles. They simply provided for a course to be pursued in carrying into effect the project of building the mills. For anything that they contain, the parties are merely tenants in common, with the ordinary rights of such over the property and in its proceeds.

Nor is it a clear proposition that if, in addition to the mutual agreement of all the parties to contribute certain sums for the purchase of the land, and for making the proposed improvements upon it, and the consequent purchase and construction of the improvements under circumstances that would bind the individuals to contribute, according to the case made by the plaintiffs, they should, in the progress of the work, arrange that it should be enjoyed by them upon the principles of a copartnership, it would at all affect their several liabilities under the original mutual contract.

Their agreement to buy the land and build a mill is one thing; so much they all agree to do. The manner of using it when built is an entirely different matter, not necessarily, as it would seem, affecting the obligations of the parties to the unqualified undertaking to purchase and to build.

Whether the defendant agreed with his associates as to the manner in which their common property should be enjoyed, when acquired and put in a condition to yield an income, must be admitted to be wholly immaterial as it regards his original engagement to buy and pay for it. So it seems wholly immaterial whether or not they agreed to proceed as partners in making the improvements. No one could be made, against his own will, to enter that relation with the others; and his obligation to contribute could not be affected by the fact that his associates chose that form of association as the most convenient for effecting the common purpose of building the mill. To hold

him, they have only to see that the conditions on which they agreed to purchase and build are fulfilled with respect to the quality of the structure, and other necessary particulars.

The motion for a nonsuit was, for all these reasons, properly denied.

As to his second point, it has been seen that if, in addition to the original agreement to purchase and improve, some of the parties enter into an association for the purpose of regulating their common action in relation to the property and the enterprise, with a view to the convenient or effective prosecution of it, whether that association be in the nature of a partnership or otherwise, they may well do so without disturbing the rights and obligations of the parties to the original agreement. It is, therefore, immaterial whether the defendant associated himself with the others or not, in the particular manner in which they united, so far as respects his promise to pay $400 towards the common object.

The evidence that he dissented from becoming a member, if the verdict had been in conformity with it, was not pertinent to the real issue. The evidence of his dissent to the conveyance was submitted to the jury; but it failed, in the encounter with other evidence, to procure a verdict in conformity with it. There was evidence of an assent to the conveyance.

The directions of the court to the jury seem to have been sufficiently favorable to the defendant. They charge him only upon the supposition that he did not withdraw from his undertaking until the mill was built.

The evidence, however, does not warrant a verdict for more than $400. It fails to show that he expressly agreed to pay more, or to show the circumstances under which any such agreement was entered into by any of the parties. With this qualification there may be

*Judgment on the verdict.*